## KEATING *v.* HALEY.

BROKERS—CONTRACT—SALE OF REAL ESTATE—RIGHT TO COMMISSIONS.

> In an action by a broker to recover his commission on a sale of real estate not consummated because of a defect in the title of the property offered in part payment by the prospective purchaser, evidence examined, and *held*, that, under the contract between plaintiff and defendant, plaintiff was not entitled to his commission merely on procuring a satisfactory offer from the purchaser, but only in case he effected a sale or exchange.[1]

Error to Wayne; Hosmer, J. Submitted October 12, 1906. (Docket No. 68.) Decided March 5, 1907.

Assumpsit by Maurice J. Keating against Martin Haley for a commission on the sale of certain real estate. There was judgment for defendant, and plaintiff brings error. Affirmed.

*Frank C. Cook*, for appellant.

*Hayes & Lawson*, for appellee,

MONTGOMERY, J. This action is brought to recover a commission claimed to be due plaintiff for finding a customer who would agree to purchase two store buildings belonging to defendant. Verdict and judgment for defendant. Plaintiff brings error.

It is not disputed that after certain negotiations, to be hereinafter referred to, plaintiff obtained of defendant a memorandum agreement, signed by him, as follows:

" Martin Haley hereby agrees to sell and convey by warranty deed to Edward E. Kane, lots 7 and 8 in block

---

[1] As to performance by real-estate broker of his contract to find a purchaser or effect an exchange of his principal's property, see note to *Lunney* v. *Healey* (Neb.), 44 L. R. A. 593

15, Reeder, Jerome and Duffield's Sub. of E. 354 ft. of P. C. 39 (being N. 125 ft. of lots 7 and 8, Blk. 15), in the city of Detroit, Wayne county, Michigan, for and in consideration of a mortgage on said property back to him in the sum of $2,750.00, payable in five years with interest at six per cent. (6%) per annum, payable semi-annually, and a warranty deed from said Edward E. Kane to him, conveying lots 25, 27, 29, 31, 33, and 35 of the plat of the subdivision of part of P. C. 171 lying N. of Michigan avenue, according to the plat thereof recorded in liber 12 of plats, on page 24, Wayne county records. Said lots being on the easterly side of Wesson avenue between Michigan avenue and Buchanan street; and said Edward E. Kane agrees to make and deliver said warranty deed conveying said lots 25, 27, 29, 31, 33 and 35, and to make and deliver said mortgage in consideration of said conveyance of said lots Nos. 8 and 9 from said Martin Haley to him. Title to all property to be free and clear of all incumbrances at time of conveyance. Burton or Union Trust Co. abstracts to be delivered with each lot by Edward E. Kane, one of which said abstracts shall be certified. Said Martin Haley also agrees to furnish Burton or Union Trust Co. abstract covering said lots 7 and 8.

"MARTIN HALEY.<br>"EDWARD E. KANE.

"Detroit, May 7, 1904."

Plaintiff had previously agreed upon these terms with Kane, and, after defendant signed the agreement, procured Kane's signature. It transpired that Kane's property was subject to certain tax titles, and these not having been cleared up by the 14th of June, and one of the titles being held by one Mary Thomas, whose whereabouts were still unknown to Kane, defendant, acting upon advice of his attorney, declared the contract at an end.

Plaintiff maintains that his commission was earned when he procured Kane to agree to make the trade upon these terms. It was unquestionably competent for the parties to make such a contract. The question is, Did they? We quote plaintiff's testimony at some length in order that no misapprehension may arise. The material portion of his direct examination is as follows:

"I know Martin Haley, the defendant, and have known him upwards of 10 years, and have been doing business with him since about 1900. I remember his coming into my office and speaking about selling some property on Fort street west. He spoke to me several times about it before he gave me a description and put a price on the property. This he did probably the early part of April, 1904. He told me that he was going to get rid of the stores. I carried the insurance on them for him for some years before that, and he gave me a description of them and put a price of $6,000 on them. He said the rental was $55 per month; and that he would take some vacant property which was free of incumbrance in exchange and a mortgage on the property. He asked what the commission would be, and I told him 3 per cent. on whatever price he might accept. He was satisfied with that. I immediately went out into the market and tried to find some one who had property that he would exchange, or who would buy Haley's property. I got an offer and submitted the offer to him about a week after the first conversation, but it was not accepted by him. The other side withdrew it. A few days after that I submitted another, and I think I submitted three propositions to him, which he told me he looked into. Mr. Kane, Mr. Jerome, and myself have connecting offices. I was talking with Mr. Gore, another real estate agent, about one of these propositions, and Mr. Kane, who was standing in his office, heard the conversation I was having with Mr. Gore, and asked me about it. I told him about Mr. Haley's property, and he said, ' If Haley's store is all right, I have got some lots on Wesson avenue, and I will make a deal with him.' He made me a proposition, which was not satisfactory to Mr. Haley, and Mr. Haley and I went out to look at these lots. We talked it over, and his wife suggested that he have some friend of his go and look at the lots. He afterwards told me the friend did go and look at the lots. After that I met him again, and there was some dickering as to the price of the lots, and as to the amount of the mortgage; Mr. Haley saying that, if I could get $5,500 for his place, he would sell it, although he gave me the price $6,000 before. If he could get $5,-500, or its equivalent, for the place, he would take it. He was thinking, then, that Mr. Kane's lots might be too high, but, if I could get the lots at that price and his price was kept up, it would even matters up; so there was a difference, I think, of $100 or $150 on the amount of

the mortgage. He told me that, if I could get Mr. Kane to agree to give him six lots and a mortgage back of $2,-750, he would then pay me $150. This conversation was on Michigan avenue, about the last part of April, 1904. I am not sure as to the street. It was on the southwest corner of Michigan avenue and Junction avenue, or a block from it. There is a large store there. We were standing there one night about 10 o'clock. We had just come away from looking at the lots. I presented this proposition to Mr. Kane the next morning. It was not accepted by Mr. Kane at that time. I had to see Mr. Haley again. Mr. Haley would not change from his position, and I finally came back to Mr. Kane, and Mr. Kane said he would do it, and then I went up to Mr. Haley and told him that Mr. Kane had accepted, and Mr. Haley accepted, and I drew up the contract in the barn of the police station on Saturday afternoon. The paper marked ' Exhibit 1 ' is the contract which I drew up, and was signed by the parties to this suit. This is the original contract in my handwriting. Mr. Haley signed it in the police barn Saturday afternoon, the 7th day of May. Mr. Kane also signed the contract, Exhibit 1, the next Monday morning in his office."

The plaintiff's counsel base the contention that the commission was earned when the contract was signed upon the statement in the testimony as follows:

" He [meaning defendant] told me that, if I could get Mr. Kane to agree to give him six lots and a mortgage back of $2,750, he would pay me $150."

This language cannot in fairness be thus segregated. Unquestionably the arrangement before this alleged conversation was that plaintiff should, in order to entitle him to a commission, actually effect a sale or exchange. It is in the light of this, and of the fact that the disagreement between defendant and Kane concerned the consideration for defendant's property, that this language must be construed. So construed, it meant no more than if defendant had said:

" If Mr. Kane will assent to modify his proposition and give me six lots and a mortgage back for $2,750, I will make your commission $150."

This obvious construction was the one upon which plaintiff acted, for he interested himself in attempting to clear up Kane's title after the memorandum agreement was signed. It appeared that on June 20th Mr. Kane had perfected his title and offered to perform. Plaintiff asked an instruction that this was, in view of the fact that defendant signed a duplicate contract on June 13th or 14th, within a reasonable time. This so-called "duplicate" does not appear in the record, nor does it appear that it was ever delivered to Kane. The court was not in error in submitting the question of whether Kane offered performance within a reasonable time to the jury. The case was fairly submitted.

Judgment affirmed.

GRANT, BLAIR, OSTRANDER, and HOOKER, JJ., concurred.